OPINION
{¶ 1} Plaintiffs-appellants Edward L. Weaver and Deborah A. Weaver, as Legal Guardians for Morgan E. Weaver, appeal from the June 28, 2001, Judgment Entry of the Tuscarawas County Court of Common Pleas.
STATEMENT OF THE FACTS AND CASE
 {¶ 2} On December 29, 1997, Morgan Weaver was severely injured in a bicycle-automobile collision. At the time of the accident, Morgan was 17 years old. Appellants Edward L. Weaver and Deborah A. Weaver, Morgan's parents, were appointed as the legal guardians of his person and estate on January 4, 1999, after Morgan was found to be incompetent.
 {¶ 3} After his accident, Morgan Weaver was a patient of appellee Edwin Shaw Hospital and appellee Healthsouth of Erie Rehabilitation Hospital. While at appellees' two separate facilities, Morgan was allegedly improperly restrained in his wheelchair, causing him to fall and injure his mouth, head and face. Morgan fell from his wheelchair on May 7, 1998, while at appellee Edwin Shaw Hospital, and fell from his wheelchair again on June 29, 1998, while at appellee Healthsouth of Erie Rehabilitation Hospital.
 {¶ 4} Subsequently, on March 10, 2000, appellants Edward and Deborah Weaver, both in their individual capacity and in their capacity as Morgan's legal guardians, filed a complaint against appellees Edwin Shaw Hospital and Healthsouth of Erie Rehabilitation Hospital. After appellee Healthsouth filed a motion for a more definite statement, appellants filed a first amended complaint on July 12, 2000. Appellants, in their amended complaint, alleged that "[t]he statute of limitations as to the claims of Morgan Weaver has been tolled pursuant to O.R.C. 2305.16
by reason of Morgan Weaver's unsound mind and adjudicated incompetency." Appellants, in Count One of the complaint, alleged, in part, as follows:
 {¶ 5} "11. Defendants, by themselves and/or through their employees and/or agents and/or apparent employees, failed to exercise that degree of care, skill and diligence ordinarily exercised by reasonably trained and prudent nurses and/or medical providers and/or healthcare providers under the same or similar circumstances as the care involved herein.
 {¶ 6} "12. Defendants, by themselves and/or through their employees and/or agents and/or apparent employees, negligently caused injury and harm to Morgan Weaver while a patient at Defendant rehabilitation centers.
 {¶ 7} "13. While not limiting the generality of the foregoing, Defendant Healthsource [sic] by and/or through its employees and/or agents and/or apparent employees, breached the requisite standard of care by negligently caring for the physical welfare and well-being of Morgan Weaver, by negligently monitoring and protecting Morgan Weaver's physical safety and health, by negligently restraining or failing to restrain Morgan Weaver within his chair and/or bed, and/or by negligently permitting Morgan Weave [sic] to fall on multiple occasions thereby severely injuring his face, teeth, jaw, head and brain.
 {¶ 8} "14. As a direct and proximate cause of the negligence and deviations from acceptable standards of medical care Defendants and/or their employees, agents and/or apparent employees, Morgan Weaver has suffered severe physical and mental injuries, medical expenses, and other expenses, and continues to suffer pain and mental anguish, and will incur future medical expenses."
 {¶ 9} In Count Two of their complaint, appellants alleged that appellees "and/or their employees, agents and/or apparent employees, negligently failed to supervise, monitor, and/or care for Morgan Weaver, and negligently failed to protect Morgan Weaver from injury."
 {¶ 10} Finally, in Count Three of the complaint, appellants alleged that they had incurred medical and other expenses associated with Morgan's injuries and would continue to incur such expenses in the future.
 {¶ 11} Thereafter, on January 2, 2001, appellee Edwin Shaw Hospital filed a Motion for Summary Judgment. Appellee Edwin Shaw, in its motion, argued that appellants' medical negligence claim "must fail as a matter of law" since it was not brought within the one year statute of limitations for medical malpractice actions set forth in R.C. 2305.11. Appellee Edwin Shaw, in its motion, further argued that the "the statute of limitations for personal injury was not tolled [pursuant to R.C.2305.16] for an incompetent individual once a guardian was appointed." Since appellants were appointed as Morgan's guardians on January 4, 1999, appellee Edwin Shaw contended that appellants had until January 4, 2000, to bring an action against Edwin Shaw, but failed to do so. Appellee Healthsouth of Erie Rehabilitation Hospital, in its January 16, 2001, Motion for Summary Judgment, also argued that appellants' medical malpractice suit was time-barred since appellants failed to commence the action within one year after their appointment as guardians.
 {¶ 12} Appellants, on February 2, 2001, filed a brief in opposition to appellees' motions. Appellants, in their brief, argued that appellees had not met their burden of proving that they were "hospitals" subject to the one year statute of limitations for medical malpractice claims set forth in R.C. 2305.11. In the alternative, appellants maintained that the one year statute of limitations for medical malpractice claims was tolled pursuant to R.C. 2305.16 because of Morgan Weaver's "unsound mind". According to appellants, their appointment as Morgan's guardians did not affect the tolling of the statute of limitations. After appellees, on February 12, 2001, filed a joint supplement to their motions for summary judgment, appellants, on February 23, 2001, filed a response to the same.
 {¶ 13} Thereafter, appellants, on February 27, 2001, filed a "Notice of Voluntary Dismissal of Count III of Amended Complaint Without Prejudice." As memorialized in a Judgment Entry filed on June 28, 2001[1], the trial court granted appellees' Motions for Summary Judgment as to Counts One and Two of appellants' amended complaint, finding that the "cases of Maylin v. Cleveland PsychiatricInstitute (1988), 52 Ohio App.3d 106
and McManus v. Belcher (Jan. 13, 1995), Lucas App. No. L-94-032, 1995 WL 12145 are persuasive on this issue."
 {¶ 14} It is from the trial court's June 28, 2001, Judgment Entry that appellants now appeal, raising the following assignment of error:
 {¶ 15} "I. The trial court erred in granting defendants-appellees' summary judgment motions."
 I {¶ 16} Appellants, in their sole assignment of error, argue that the trial court erred in granting summary judgment to appellees. We agree.
 {¶ 17} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 18} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 19} As an initial matter, appellants contend that appellees "did not carry their burden on summary judgment of proving that they are `hospitals' subject to the one-year statute of limitations for `medical claims ` under O.R.C. 2305.11."[2] Pursuant to R.C. 2305.11(B), an action upon a medical claim "shall be commenced within one year after the cause of action accrued." A "medical claim" is defined in R.C.2305.11(D)(3) as meaning "any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against an employee or agent of a physician, podiatrist, or hospital, or against a registered nurse, midwife, or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. "Medical claim" includes . . . [d]erivative claims for relief that arise from the medical diagnosis, care, or treatment of a person." (Emphasis added.) In Rome v.Flower Mem. Hosp., 70 Ohio St.3d 14, 16, 1994-Ohio-43, 635 N.E.2d 1239, the Ohio Supreme Court interpreted this language to include actions arising from procedures which were "ancillary" and "inherently necessary" to the "identification and alleviation of a physical or mental illness, disease, or defect."
 {¶ 20} In turn, R.C. 2305.11(D)(1) defines a "hospital" as follows: "[h]ospital" includes any person, corporation, association, board, or authority that is responsible for the operation of any hospital licensed or registered in the state, including, but not limited to, those that are owned or operated by the state, political subdivisions, any person, any corporation, or any combination thereof. `Hospital' also includes any person, corporation, association, board, entity, or authority that is responsible for the operation of any clinic that employs a full-time staff of physicians practicing in more than one recognized medical specialty and rendering advice, diagnosis, care, and treatment to individuals. . . ."
 {¶ 21} Upon our review of the record we concur with appellees that appellants have, in the case sub judice, conceded that appellees are hospitals and that, therefore, there is no genuine issue of material fact with respect to such issue. As noted by both appellees, appellants, in their May 5, 2000, response to appellee Healthsouth's Motion for a More Definite Statement, refer on page 4 of the same to their claims against appellee Healthsouth as a "malpractice" claim. As is stated above, a claim is a medical claim only if it is asserted against a physician, podiatrist or a hospital. See R.C. 2305.11(D)(3). By admitting that their claim was a medical malpractice claim, appellants have, in essence, conceded that appellee Healthsouth is a hospital since such appellee clearly is not a "physician" or "podiatrist".
 {¶ 22} Furthermore, in their response to appellee Healthsouth's Interrogatory No. 20, appellants responded in the negative when asked whether they had ever made a claim against "any other medical practitioner or hospital". (Emphasis added). As noted by appellee Edwin Shaw in its brief, "[t]hrough this silent acquiescence, Defendants Edwin Shaw Hospital and Healthsouth were led to the reasonable belief that their hospital status, widely acknowledged in the community at large, was undisputed in this matter."
 {¶ 23} Having found that appellants' claims are medical claims, the next issue for determination is whether appellants' claims are, as appellees allege, time-barred by the one year statute of limitations set forth in R.C. 2305.11(B). While appellants maintain that the statute of limitations is tolled indefinitely due to Morgan Weaver's adjudication of incompetency, appellees, in turn, argue that the toll on the statute of limitations was lifted when appellants, Morgan's parents, were appointed as legal guardians of his person and estate on January 4, 1999. According to appellees, since appellants failed to file suit within one year of their appointment on January 4, 1999, their claims are time-barred.[3]
 {¶ 24} As is stated above, R.C. 2305.11(B) establishes a one year statute of limitations for medical malpractice claims. However, pursuant to R.C. 2305.16, the statute of limitations is tolled "due to minority or unsound mind." Such section states as follows:
 {¶ 25} "Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to 2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed. When the interests of two or more parties are joint and inseparable, the disability of one shall inure to the benefit of all.
 {¶ 26} "After the cause of action accrues, if the person entitled to bring the action
 {¶ 27} becomes of unsound mind and is adjudicated as such by a court of competent jurisdiction or is confined in an institution or hospital under a diagnosed condition or disease which renders the person of unsound mind, the time during which the person is of unsound mind and so adjudicated or so confined shall not be computed as any part of the period within which the action must be brought."
 {¶ 28} In the case sub judice, Morgan Weaver was of "unsound mind" at the time the cause of action accrued (i.e. when he allegedly fell from his wheelchair). Therefore, the first paragraph of R.C. 2305.16, cited above, is applicable.
 {¶ 29} As previously noted, appellees argued, and the trial court concurred, that the one year statute of limitations for medical malpractice actions had expired and that appellants' claims were, therefore, time-barred. The trial court, in its entry, specifically citedMaylin v. Cleveland Psychiatric Institute (1988), 52 Ohio App.3d 106,557 N.E.2d 170 and McManus V. Belcher (Jan. 13, 1995), Lucas App. No. L-94-032, for the proposition that the appointment of a guardian suspends the tolling of the statute of limitations.
 {¶ 30} However, we find that such cases are not persuasive. In Maylin, supra., the guardian of a mentally incompetent person brought an action against a psychiatric hospital seeking to recover expenses incurred by the guardian for injuries that his ward sustained after jumping out the hospital's window. The guardian also brought an action on the ward's behalf for injuries sustained by her. Since there was no indication that the guardian was guardian of the estate, rather than guardian of the person, or that the guardian had been authorized by the Probate Court to bring the action, the court, in Maylin, held that the guardian could not bring a cause of action on the ward's behalf for the ward's injuries. The court, in Maylin, specifically stated that itdeclined to "decide whether R.C. 2305.16 would apply to a guardian of the estate bringing a cause of action on behalf of his ward, . . ." since such issue was not before the court. Id. at 109. (Emphasis added). The court further held that since a guardian is a separate individual from his incompetent ward, he personally may not benefit from the tolling provisions of R.C. 2305.16. According to the court, a guardian's cause of action to recover expenses incurred by him on behalf of his ward "is separate and distinct from his ward's cause of action, and thus is not tolled by R.C. 2305.16." Id at 109. Thus, as appellants note in their brief, the issue of the effect of a guardian's appointment on the running of the statute of limitations for derivative (as opposed to personal) claims was never addressed in Maylin, supra.
 {¶ 31} While appellees and the trial court also cited to McManus, supra., we concur with appellants that the court, in such case, misapplied Maylin. In McManus, an individual suffered severe brain injuries due to a December 8, 1989, automobile accident. Such individual was adjudicated incompetent and a guardian of his person and estate was appointed on May 16, 1990. Thereafter, on April 20, 1993, the guardian filed a negligence action in his capacity as guardian against Chrysler Corp., Garry Belcher, d.b.a. Shoreland Auto Care, and Coltec Industries, Inc. and also filed products liability claims against Chrysler and Coltec. The trial court later granted summary judgment to all of the defendants, holding that the complaint was barred by the two year statute of limitations applicable to bodily injury claims.
 {¶ 32} The guardian then appealed, arguing that the complaint was not time-barred since the statute of limitations is tolled, pursuant to R.C. 2305.16, during the time where a plaintiff has been adjudicated incompetent. The Court of Appeals, in holding that the trial court did not err in granting summary judgment on the ground that the statute of limitations had run, stated as follows: "While R.C. 2305.16 provides that a statute of limitations is tolled for persons adjudicated incompetent, a different issue is raised once a guardian has been appointed for the incompetent individual. Courts have held that once a guardian has been appointed for an incompetent individual, such guardian may not benefit from the tolling provisions of R.C. 2305.16. Maylin v. ClevelandPsychiatric Institute (1988), 52 Ohio App.3d 106, 108, and Seguin v.Gallo (1985), 21 Ohio App.3d 163. In Maylin, the court held as follows:
 {¶ 33} "[A]n appointment as a guardian does not carry with it a delegation of authority which will enable a guardian to act as the `alter ego' of the ward. Thus, a guardian may not benefit from the tolling provisions of Revised Code § 2305.16 since he is a separate individual from the incompetent ward and, as a result, he is prevented from having the ward's disability inure to its benefit." Maylin at 108.
 {¶ 34} "Therefore, the statute of limitations for personal injury is not tolled for an incompetent individual once a guardian has been appointed.
 {¶ 35} "In the present case, a guardian was appointed for Charles Smith on May 16, 1990. As of that date, the tolling provision of R.C.2305.16 was no longer of any effect and the two-year statute of limitations for personal injury began to run. McManus did not file his complaint, on behalf of Smith, until April 20, 1993, more than two years from the date a guardian was first appointed." See McManus, supra. at 2.
 {¶ 36} While the court, in McManus, cited Maylin in holding that the statute of limitations for personal injury is not tolled for an incompetent individual once a guardian has been appointed, as is stated above, this is the exact issue that the court in Maylin declined to address. Thus, for the foregoing reasons, we find that Maylin and McManus are not persuasive.
 {¶ 37} Having found the cases relied on by appellees and the trial court are not dispositive, we must next consider the issue of statutory construction. As in any case of statutory construction, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. Brooks v. Ohio State Univ. (1996),111 Ohio App.3d 342, 349, 676 N.E.2d 162, (citing Featzka v. MillcraftPaper [1980], 62 Ohio St.2d 245 405 N.E.2d 264). In so doing, however, the court must first look to the plain language of the statute itself to determine the legislative intent. State ex rel. Burrows v. Indus. Comm.,78 Ohio St.3d 78, 81, 1997-Ohio-310, 676 N.E.2d 519; In re Collier (1993), 85 Ohio App.3d 232, 237, 619 N.E.2d 503, ("Under Ohio law, it is cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent."). Thus, if the language used in a statute is clear and unambiguous, the statute must be applied as written and no further interpretation is necessary. See Burrows, supra. "It is only where the words of a statute are ambiguous, uncertain in meaning, or conflicting that a court has the right to interpret a statute." Brooks, supra. at 349.
 {¶ 38} R.C. 2305.16 provides, in relevant part, as follows: "Unless otherwise provided in sections 1302.98, 1304.35, and 2305.04 to2305.14 of the Revised Code, if a person entitled to bring any action mentioned in those sections, unless for penalty or forfeiture, is, at the time the cause of action accrues, within the age of minority or of unsound mind, the person may bring it within the respective times limited by those sections, after the disability is removed." As argued by appellants in their brief, there is no provision in R.C. 2305.16 stating that a person, such as Morgan Weaver, who is incompetent at the time the cause of action accrues is no longer entitled to the tolling of the limitations period once a guardian is appointed.
 {¶ 39} As noted by the court in Halbert v. Emch (Sept. 20, 1985), Lucas App. No. L-84-310, "[t]his section [R.C. 2305.16], known as the savings clause, tolls the statute of limitations for disabled individuals until the disability is removed. This section is generally construed to provide disabled individuals with an indefinite period of time to commence a legal action, subject to restrictions due to the form of the disability. The section does not have any language which indicates that the various statutes of limitations would begin to run when the disabled individual's legal guardian discovered, or should have discovered, the incompetent's cause of action.
 {¶ 40} "The savings clause was the legislature's attempt to protect the legal rights of individuals who cannot protect their rights themselves. The legislature in recognizing the disabled individual's inability to protect his rights balanced the inequities and harshness of the results due to the disability against the general objectives of all statutes of limitations and determined that in the interests of justice and fairness that the limitations period should be tolled until the injured, impetent [sic] party was capable of independently initiating a legal action. Cf. Mominee v. Scherbarth, supra. The legislature did not provide any statutory language indicating that an incompetent's cause of action accrues when the legal guardian discovered, or should have discovered, the injury and cause thereof. Nor have the trial courts ruled that, pursuant to R.C. 2305.16, a disabled individual's cause of action accrues and the statute of limitations begins to run when the legal guardian has knowledge, actual or constructive, of the injury and its cause.
 {¶ 41} "If the trial courts had ruled that an incompetent's cause of action accrues and the statute of limitations begins to run when a guardian discovered, or should have discovered, the alleged wrongdoing, then the effect would be to emasculate the savings clause. The total period of time to elapse from the appointment of the guardian until the ensuing discovery of the alleged malpractice would, in all likelihood, be short and would not provide a sufficient period of time to justify the legislature's enactment of the savings clause. Therefore, the better view is that the legislature viewed an individual's cause of action as personal to the injured party, and consequently, the legislature determined that the limitations period would not run until the injured party had the mental capacity to understand and appreciate the nature of the injury and the possible cause thereof. Mominee v. Scherbarth, supra.
 {¶ 42} "If the legislature intended any other reading of the statute, it has had ample time and opportunity to so provide for it. . . . In fact, the legislature could have paralleled California's workers' compensation legislation which specifically states that the limitation period begins to run when the guardian is appointed. See Fisher v.Workers' Compensation Appeals Bd. (1976), 133 Cal.Rptr. 471; CAL LAB. CODE § 5408 (West 1971, Sup. 1985). The Ohio General Assembly has not chosen to do so, perhaps in large part due to the constitutional implications that would arise by such a provision, and we likewise choose not to impose a similar provision." Id. at 5.
 {¶ 43} For the same reasons, we find that the tolling of the statute of limitations did not cease once appellants were appointed as guardians for Morgan Weaver's estate and person. R.C. 2305.16 clearly and unambiguously provides that if a person is of unsound mind at the time the cause of action accrues, the person may bring his cause of action within the relevant statute of limitations "after the disability is removed." Had the legislature intended for the appointment of a guardian in such a case to cease the tolling of the statute of limitations under2305.11(B), the legislature clearly could have so provided. The legislature, however, failed to do so.
 {¶ 44} As noted by appellants, the tolling statute "already contains several specific exceptions created by the General Assembly, . . ." The second paragraph of R.C. 2305.16, for example, provides that if a person becomes of unsound mind and is adjudicated as such after the cause of action accrues, "the time during which the person is of unsound mind and so adjudicated . . . shall not be computed as any part of the period within which the action must be brought." The maxim that the expression of one thing implies the exclusion of another ("expressio unius est exclusio alterius"), prohibits the inclusion of additional exceptions to the tolling statute. See, e.g., Green, Inc. v. Smith
(1974), 40 Ohio App.2d 30, 32, 317 N.E.2d 227, 229.
 {¶ 45} Appellants' sole assignment of error is, therefore, sustained.
 {¶ 46} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
By Edwards, J., Wise, P.J. and Boggins, J. concur.
In Re: PI — Summary Judgment — Medical Malpractice.
[1] The trial court, on May 1, 2001, had issued a Judgment Entry granting summary judgment as to Count One of the amended complaint and ordering that Count Two of the amended complaint remain scheduled for trial on August 28, 2001. However, after appellees filed a joint motion seeking clarification of such entry, the trial court, on June 28, 2001, issued a Nunc Pro Tunc Judgment Entry.
[2] While not specifically raised or addressed by the parties, we note that not all claims asserted against a hospital are "medical claims" and, therefore, subject to the one-year statute of limitations set forth in R.C. 2305.11(B)(1). However, we find that appellants' claims against appellees are medical claims since Morgan was a hospital patient when injured, he was undergoing diagnostic tests or treatment, he was being assisted by a hospital employee, and he was injured en route to, or in the course of, a service that was necessary to the treatment of medical complaints. See Rome v. Flower Mem. Hosp., 70 Ohio St.3d 14, 17,1994-Ohio-43, 635 N.E.2d 1239. In short, Morgan's injury resulted from his "care, or treatment," and therefore, is a medical claim subject to the one year statute of limitations, in R.C. 2305.11(B).
[3] As is stated above, the complaint in the case sub judice was filed on March 10, 2000.